Dickman, C. J.
The plaintiff in error, The Cincinnati Oyster & Fish Company, is a corporation organized under the laws of Ohio; and the defendant in error, The National Lafayette Bank, is a corporation organized under the laws of the United States. In June, 1887, the Lafayette Bank received from a banking correspondent in Michigan, for collection, a sight draft for. fifty-four dollars, drawn upon the plaintiff in error. On the 20th day of June, 1887, the plaintiff in error, on receiving the draft from the Lafayette Bank, gave to that bank, in exchange, its check for fifty-four dollars, already, by the procurement of the plaintiff in error, certified by The Fidelity National Bank of Cincinnati, Ohio. • The following is a copy of the check and its certification:
“No. 344. Cincinnati, June 20, 1887.
“The Fidelity National Bank pay to the order of National Lafayette Bank, fifty-four dollars.
“The Cincinnati Oyster & Fish Company.
“$54.00. Stephen Chase, Superintendent.
(“ Certification.)
“Good for $54.00, when property indorsed.
“Fidelity National Bank,
Ammi Baldwin, Ccoshier.”
On the same day — the 20th of June — the amount of the check was at once credited by the Lafayette Bank to the account of its banking correspondent. The check was duty indorsed, and duty presented to the Fidelity National Bank on the 21st day of June, 1887, and payment was refused —the Fidelity Bank having failed and closed its doors. The check was duty protested on the same day for non-payment, and notice of such non-payment was served upon the plaintiff in error, at its place of business in Cincinnati.
*109 Demand of payment of the check was made upon the plaintiff in error, and payment was by it refused.
At the time of the transaction between the parties to this cause, it was usual and customary for banks and bankers in Cincinnati to send notices to persons owing accounts at banks, that “checks on other banks are not received in payment for drafts after half-past one o’clock unless certified;” and for those receiving such notices, to take up and pay off drafts or other mercantile paper with certified cheeks. But while it was thus the general rule of banks and bankers to require checks offered in payment of drafts, notes, or other mercantile paper after half-past one o’clock, to be certified, that rule was not such that it might not be permitted to go unobserved, if the party receiving the check was satisfied that it was good, or that the party drawing it was responsible.
The record presents only one question that claims our consideration, and that is, can the drawer of a certified check be held liable for its payment, where it is certified by the bank at his own instance, request, or procurement, before he delivers it to the payee.
Among the numerous definitions of checks which the text writers give, that of Mr. Daniels, in his treatise on negotiable instruments, (§1566) has been very generally approved. A check is there defined as, “a draft or order upon a bank or banking house, purporting to be drawn upon a deposit of funds for the payment at all events of a certain sum of money, to a certain person therein named, or to him or his order, or to bearer, and payable instantly on demand.” It is an absolute transfer or appropriation of so much money in the *110 hands of the drawee. If the payee or holder presents the check for payment before the close of banking hours on the next day after its date, and payment is refused, the drawer, if duly notified, will be liable. And the drawer will not be discharged from liability by the delay of the holder to make presentment and give notice of dishonor, unless he has suffered loss thereby; and if the bank remains solvent, and the fund upon which the check is drawn is unaffected by the delay, the liability of the drawer continues, ordinarily, in full force.
The certification of the check by the bank as “good,” procured by the drawer, on his own motion, before its delivery to the payee, will not relieve the latter from the necessity of making due presentment and giving due notice of its dishonor, if he would hold on to the liability of the drawer; nor, will such a certification discharge the drawer where the bank becomes insolvent, if the payee uses the proper diligence in presenting the check for payment, and giving notice of its dishonor. In other words, where the drawer of the check delivers it already certified, the relations of the payee or holder and the drawer are not affected by the circumstance that the check is certified; their duties and obligations toward each other remain the same as they would have been had the check not been certified.
Upon presentation of the check by the drawer to the bank for certification, it becomes manifest that it is designed to be negotiated, and that the drawer, to facilitate its negotiation, seeks to strengthen his own obligation by adding to it that of the bank. The certification becomes an acknowb edgment by the bank, that the drawer has funds *111 on deposit, which the bank will pay over to the holder of the check upon its being presented. Assurance is thereby given to the payee that the cheek has not been drawn without provision to meet its payment. A check so certified, when offered in taking up drafts, notes, or other mercantile paper, if it is received too late to pass through the clearing house on the day when offered, may inspire confidence that when presented the next day for payment it will not be dishonored. But such an enlargement of the security is not to be construed into an absolute discharge of the drawer of the check. By simply receiving the cheek in the form in which it is presented, the holder does not make the drawee his sole debtor, as when, after becoming the owner, the holder procures the certification of the check — thus voluntarily making the bank upon which it is drawn his sole debtor, and releasing the drawer. Born v. Bank, 123 Ind. 78, 24 N. E. Rep. 173.
It is said, however, in behalf of the plaintiff in error, that the drawer of the check in dispute caused it to be certified by the requirement of the Lafayette Bank. The record does not lead us to that conclusion. It is not anywhere stated that the notice was sent to the plaintiff in error, that checks on other banks would not be received in payment for drafts after one and a half o’clock, unless certified. The bank notified the plaintiff in error that it held for collection the sight draft received from its banking correspondent in Michigan, but what else that notice contained does not appear, as the notice itself was not offered in evidence. As agreed to by counsel for the parties to the cause, the plaintiff in error received from the Lafayette* Bank the sight draft, “and, in exchange *112 therefor, gave its check, already, by its procurement, certified by The Fidelity National Bank.” The fact that when the check was thus given it had already been certified by the procurement of the plaintiff in error, would in itself, preclude the idea that the bank had procured it to be certified. Moreover, the rule requiring cheeks offered after half-past one o’clock in payment of drafts to be certified, was not an invariable one, but its enforcement was dependent upon whether the party receiving a check was satisfied that it was good, or that the party drawing it was responsible.
If the cheek on The Fidelity National Bank had been uncertified, it would not be contended that it was taken in absolute and final discharge and satisfaction of the sight draft. It would rather be deemed to have been taken in payment on the condition that it should be paid when presented. An uncertified check, if given in the ordinary course of business, and unattended by special circumstances, is not presumed to be received as absolute payment, even if the drawer have funds in the bank. The holder is not bound by receiving it, but may treat it as a nullity if he derives no benefit from it, provided he has been guilty of no negligence which has caused an injury to the drawer. 2 Pars. Contr., 8 ed. 736. The .payee to whom the debt is owing may demand money in lieu of a check, in the absence of an express agreement. No implication arises from the mere fact that the drawer has procured the check to be certified, that it is accepted as money or currency. The rule has been laid down in New York, that by the act of certification the bank undertakes for only two facts, viz.: The genuineness of the drawer’s signature, and the sufficiency of his account to meet the demand of *113 payment;. that it vouches for nothing further, either in the body of the check or indorsed upon it. Bank v. Bank, 59 N. Y. 67. While the act of certification may increase the negotiability of the check in the market, it cannot be regarded as evidence of the solvency of the bank, and,per se, gives rise to no presumption that a check is accepted in payment, as money. It was said in Born v. Bank, supra: “It neither represents nor touches the question of the solvency of the bank upon which it is drawn. There is, therefore, no just reason for concluding that the party who takes a .certified check, in the ordinary course of business, assumes the risk of the solvency of the bank chosen by the drawer of the check as his place of deposit. * * The certification of a check is not intended to convey to the person to whom it is offered an assurance that the bank upon which it is drawn is solvent, for there is nothing in the nature of the transaction, nor in the form of the contract, which authorizes the inference that any of the parties expected or intended that it should have that effect.”
The question of the drawer’s liability on a check, procured by him to be certified before delivering it to the payee, has received the consideration of the Supreme Court of Massachusetts, in the cases, Head v. Hornblower, and Minot v. Russ, 156 Mass. 458, 31 N. E. Rep. 489. In the opinion by Field, C. J., a marked distinction is drawn between checks presented for certification by the drawer, and those whose certification is procured by the payee or holder. It was there held that when the payee or holder of a check presents it for certification, the bank knows that it is done for the convenience or. security of the holder. The holder *114 could, demand' payment, if he chose, and it is only because instead of payment the holder desires certification that the bank certifies the check instead of paying it. In the opinion it is said: ‘ ‘The weight of authority is that if the drawer, in his own behalf, or for his own benefit, gets his check certified, and then delivers it to the payee, the drawer is not discharged; but that if the payee or holder, in his own behalf, or for his own benefit, gets it certified instead of getting it paid, then the drawer is discharged. We are of the opinion that this view of the law rests on sound reasons. * * If persons receive checks uncertified, and then present them to the bank for certification instead of payment, the certification should be considered as discharging the drawer.”
A check being payable immediately on demand, the holder has no right to demand from the bank anything but payment of the check; and the bank has no right, as against the drawer, to do anything else but pay it. Dan. Neg. Ins., § 1601. Where, therefore, the holder, instead of demanding’ and receiving the money, has the check certified, and leaves the money in the bank subject to future draft, he enters into independent contractual relations with the bank not contemplated by the drawer, and to which the drawer is not a party. Instead of receiving payment, as he might and should have done, he chooses to accept in place of payment an express executory agreement by the bank to pay the check to the holder, when presented for payment at any time thereafter. Bank v. Jones, 137 Ill. 634, 27 N. E. Rep. 533. In contemplation and by operation of law, the holder is in the position of having’ actually drawn out the funds from the bank, and re-deposited them to his *115 own credit, and caused a'certificate of deposit to be issued to him therefor. It is evident that the drawer is thereby made to stand in a different relation to the payee and holder from what he would were the check certified by his own procurement prior to its delivery to the payee.
We find no error in the record that would justify a reversal of the judgment of the court below, and the judgment of the circuit court is therefore

Affi/rmed.